# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
Maria R. Ackerson; Rita Aquina; Andrew Barten; Edward
Boyce; Jude Brewer, individually and on behalf of the
Estate of Marianne Brewer; Iris Cales; Theresa Caputo;
John Carr; Armand L. Cipullo, individually and on behalf of
the Estate of Angela Cipullo; Patricia D'Accolti; Matthew
Ferber; Renee Gannon; William Gladitsch; Sara Grandison,
individually and on behalf of the Estate of Geralyn
Grandison; Robert Haley; Lauri Henriques; Diane Hirsch;
Edyta Klimkiewicz; Regina Kreuz; William Lavin; Candace
Lu; Scott Lutzer; Marie Martello; Kathleen McCarthy; Mary
McDonald; Jessica McNally; Sarah Motto; Antonia Novak,
individually and on behalf of the Estate of Frank Novak;
Michael O'Shea; Clara Palumbo; Roxane Pandya; Maria
Panno; Joseph Reid; Brian Reid; Damon Rivera; Josephine
Ryan; Bonnie Scence; Lisa Sciarratta; Dana Seaman;
Nicholas Sergio; John Sharrocks; Angelo V. Sottile; Ariana
Tantillo; Anthony Tommasulo; Mildred Tommasulo; Frank
Turrisi; Frank Verdone; Thomas Villani; Neil Wegman;
Nicholas Yaniro,

|  |  |
|---|---|
| | Index No. _____/2019 |
| | SUMMONS |
| | Trial by jury is desired in the County of Nassau |
| | Venue is proper in Nassau County pursuant to CPLR §§ 503(a), 503(c) and 507 – Plaintiffs' place of residence, location where the claims arose, and location of the real property affected. |

                                    *Plaintiffs,*

        -against -

NORTHROP GRUMMAN CORPORATION and
NORTHROP GRUMMAN SYSTEMS CORPORATION

                                    *Defendants.*
-------------------------------------------------------------------X
TO THE ABOVE NAMED DEFENDANTS:

        You are hereby summoned and required to serve upon the Plaintiffs' attorneys an answer

to the complaint in this action within twenty (20) days after the service of this summons,

exclusive of the day of service, or within thirty (30) days after service is complete if this

summons is not personally delivered to you within the State of New York. In case of your failure

to answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated: Melville, New York
        January 11, 2019

Yours, etc.,

NAPOLI SHKOLNIK PLLC
*Attorneys for Plaintiffs*

Lilia Factor, Esq.
Paul Napoli, Esq.
Tate Kunkle, Esq.
400 Broadhollow Rd., Suite 305
Melville, New York 11747
(212) 397-1000

To:
NORTHROP GRUMMAN CORPORATION
Registered Agent
CT Corporation
111 Eighth Avenue
New York, New York 10011

NORTHROP GRUMMAN SYSTEMS CORPORATION
Registered Agent
CT Corporation
111 Eighth Avenue
New York, New York 10011

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------X

Maria R. Ackerson; Rita Aquina; Andrew Barten; Edward
Boyce; Jude Brewer, individually and on behalf of the Estate
of Marianne Brewer; Iris Cales; Theresa Caputo; John Carr;
Armand L. Cipullo, individually and on behalf of the Estate of
Angela Cipullo; Patricia D'Accolti; Matthew Ferber; Renee
Gannon; William Gladitsch; Sara Grandison, individually and
on behalf of the Estate of Geralyn Grandison; Robert Haley;
Lauri Henriques; Diane Hirsch; Edyta Klimkiewicz; Regina
Kreuz; William Lavin; Candace Lu; Scott Lutzer; Marie
Martello; Kathleen McCarthy; Mary McDonald; Jessica
McNally; Sarah Motto; Antonia Novak, individually and on
behalf of the Estate of Frank Novak; Michael O'Shea; Clara
Palumbo; Roxane Pandya; Maria Panno; Joseph Reid; Brian
Reid; Damon Rivera; Josephine Ryan; Bonnie Scence; Lisa
Sciarratta; Dana Seaman; Nicholas Sergio; John Sharrocks;
Angelo V. Sottile; Ariana Tantillo; Anthony Tommasulo;
Mildred Tommasulo; Frank Turrisi; Frank Verdone; Thomas
Villani; Neil Wegman; Nicholas Yaniro,

Index No. _____ /2019

**VERIFIED COMPLAINT**

*Plaintiffs,*

-against -

NORTHROP GRUMMAN CORPORATION and
NORTHROP GRUMMAN SYSTEMS CORPORATION,

*Defendants.*
--------------------------------------------------------------------X

Plaintiffs, Maria R. Ackerson; Rita Aquina; Andrew Barten; Edward Boyce; Jude

Brewer, individually and on behalf of the Estate of Marianne Brewer; Iris Cales; Theresa

Caputo; John Carr; Armand L. Cipullo, individually and on behalf of the Estate of Angela

Cipullo; Patricia D'Accolti; Matthew Ferber; Renee Gannon; William Gladitsch; Sara

Grandison, individually and on behalf of the Estate of Geralyn Grandison; Robert Haley; Lauri

Henriques; Diane Hirsch; Edyta Klimkiewicz; Regina Kreuz; William Lavin; Candace Lu; Scott

Lutzer; Marie Martello; Kathleen McCarthy; Mary McDonald; Jessica McNally; Sarah Motto;

Antonia Novak, individually and on behalf of the Estate of Frank Novak; Michael O'Shea; Clara

Palumbo; Roxane Pandya; Maria Panno; Joseph Reid; Brian Reid; Damon Rivera; Josephine

Ryan; Bonnie Scence; Lisa Sciarratta; Dana Seaman; Nicholas Sergio; John Sharrocks; Angelo

V. Sottile; Ariana Tantillo; Anthony Tommasulo; Mildred Tommasulo; Frank Turrisi; Frank

Verdone; Thomas Villani; Neil Wegman; and Nicholas Yaniro, ("Plaintiffs"), through their

attorneys, Napoli Shkolnik PLLC, complaining of NORTHROP GRUMMAN CORPORATION

and NORTHROP GRUMMAN SYSTEMS CORPORATION ("Defendants"), hereby allege as

follows:

### INTRODUCTION

1.        Plaintiffs are all individuals who are current or former residents and/or property

owners in or around Bethpage, New York, a municipality located within the Town of Oyster Bay

in Nassau County.

2.        At the time of sustaining the injuries complained of herein, Plaintiffs were the

owners and/or occupants of homes located in the vicinity of the area formerly known as the

Grumman Aerospace-Bethpage Facility Site, including the Northrop Grumman – Bethpage

Facility, the Naval Weapons Industrial Reserve Plant – Bethpage ("NWIRP"), and the Grumman

Steel Los Site.

3.        Many of the toxic waste products used in the operations at the above facilities were

disposed of by the Defendants on site, including on an adjacent parcel which was later donated by

Grumman to the Town of Oyster Bay and became known as Bethpage Community Park ("Park").

4.        Collectively, the Grumman-Navy facilities consisting of approximately 635 acres

in Nassau County, including the Grumman Aerospace-Bethpage Facility Site, the Northrop

Grumman – Bethpage Facility, NWIRP, the Grumman Steel Los Site and the Park shall be

referred to as the Site.

5.        Upon information and belief, Grumman Aeronautical Engineering was

incorporated in New York in 1929 and changed its name to "Grumman Corporation" in 1969.

2

Grumman Corporation's headquarters were in Bethpage, New York. Grumman Aerospace Corporation was a subsidiary of Grumman Corporation, with its principal place of business in Bethpage, New York. Collectively, Grumman Corporation and Grumman Aerospace Corporation are referred to herein as "Grumman."

6. In 1994, Grumman was acquired by Northrop Corporation. The two companies merged in 1995 to become Northrop Grumman Corporation.

7. During several decades while it operated at the Site, Grumman, an airplane, weapons and satellite manufacturer with significant U.S. Department of Defense contracts, generated, stored, and disposed of toxic contaminants and manufacturing byproducts, such as arsenic, cadmium, chromium, lead, mercury, polychlorinated biphenyls ("PCBs"), metals, radioactive materials, volatile organic compounds ("VOCs") and 1,4-Dioxane at the Site. Collectively, these substances shall be referred to herein as Contaminants.

8. These practices resulted in extensive pollution at the Site and contaminated off-Site soils, air, groundwater and drinking water supplies in the area, causing Plaintiffs' injuries.

9. In addition, due to the negligent, willful, and/or wanton actions of the Defendants, an unknown quantity of Contaminants were released at the Site and created massive migrating plumes of contaminated groundwater.

10. These plumes, designated by the New York State Department of Environmental Conservation ("DEC") as Operable Unit 2 ("OU-2") and Operable Unit 3 ("OU-3"), have resulted in the migration of the contaminants onto Plaintiffs' properties, causing Plaintiffs to suffer ongoing injuries, including significant health impairments and future health concerns.

11. In or about September 2016, a class action complaint was filed in this Court against the above Defendants under Index No. 607036/16 ("class action"). The class action, which is now pending in the U.S. District Court for the Eastern District of New York, was filed on behalf of

3

Bethpage area residents and/or homeowners whose properties and person have been adversely impacted by the above contamination.

12.     The class action seeks damages for the plaintiffs' and putative class members' past and continued exposure to toxic contaminants, the remediation and loss of use and diminution of value of plaintiffs' properties, loss of quality of life and medical monitoring, as well as punitive damages.

13.     The instant action states individual claims for personal injury and other damages based on the same causes of action, namely, negligence, strict liability, nuisance and trespass.

## JURISDICTION

14.     This Court has personal jurisdiction over the Defendants, as each of them is doing business in New York and owns property in New York, such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this state.

15. .   This Court has subject matter jurisdiction in this action based on the claims herein, which are all based on New York law and the local nature of this case.

## VENUE

16.     This case is properly venued in this Court, pursuant to CPLR §503(a), because most of the Plaintiffs reside in Nassau County.

17.     This case is properly venued in this Court, pursuant to CPLR §503(c), because the causes of action against the Defendants arose in this County. Specifically, Defendants and/or their predecessors and/or successors own/ed and/or operate/d the Site at the time of the disposal and/or release and/or failure to remediate the impacts of hazardous and toxic substances, causing Plaintiffs' injuries in this County.

4

Case 1:19-cv-00942  Document 1-2  Filed 02/15/19  Page 8 of 73 PageID #: 37

18.     This case is properly venued in this Court, pursuant to CPLR §507, because Defendants' actions and omissions have and continue to affect the use and enjoyment of Plaintiffs' real property in this County.

## THE PARTIES: PLAINTIFFS

19.     The Plaintiffs are either current or former property owners and/or residents of the Bethpage area in the vicinity of the Site and/or the OU-2 and OU-3 contaminant plumes.

20.     Many of the Plaintiffs have and/or continue to visit and use the Park for recreation.

21.     The Plaintiffs' causes of action related to soil, water and air contamination and exposure are continuing in nature.

22.     The hazardous and toxic substances described herein are environmental contaminants as set out in Section 6.8.1 of the ATSDR Public Health Assessment Guidance Manual.

23.     Plaintiffs are an 'exposed population' as defined in Section 6.8.1 of the ATSDR Public Health Assessment Guidance Manual as follows:

A population is considered exposed if a completed exposure pathway, which links a contaminant with a receptor population, exists in the past, present, or future. An exposed population includes persons who ingest, inhale, or contact site contaminants or are exposed to radiation in the past, present, or future. Examples of exposed persons include those who:

   • *have ingested, are ingesting, or will ingest the contaminant from one or more environmental media;*
   • *have inhaled, are inhaling, or will inhale the contaminant from one or more environmental media;*
   • *have contacted, are contacting, or will contact the contaminant in one or more environmental media; and*
   • *were exposed, are exposed, or will be exposed to gamma radiation from one or more environmental media.*

*If an environmental medium (soil) contains a contaminant of concern at a point of exposure (a residential yard), and evidence already exists that a route of exposure (ingestion) has occurred, is occurring, or will occur, the health assessor should assume that persons living at that residence are exposed or will be exposed. If the residential yard contains a vacant house, the health assessor should assume that future residents will be exposed. Persons should also be considered exposed if*

5

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 9 of 73 PageID #: 38

*exposure has been verified by human biologic measurements or medical examination. For health assessments, human biologic measurements or medical examination are not necessary for the assignment of an exposure category to a population.*

24. Defendants' conduct was grossly negligent, intentional, conscious, and was undertaken with callous and malicious disregard for the health, well-being and safety of Plaintiffs and others.

24. As a consequence of the foregoing misconduct on the part of Defendants, each of the Plaintiffs sustained and with reasonable probability will in the future sustain the following injuries and/or damages:

  a. physical pain and suffering;

  b. physical disabilities;

  c. mental anguish;

  d. loss of the enjoyment of life's pleasures;

  c. inability to participate in his/her usual employment and activities;

  f. lost income and lost earning opportunities;

  g. medical expenses (past and future);

  h. economic loss;

  i. loss of companionship, services and support (for decedent estate representatives)

  j. and was otherwise damaged.

25. In addition, Plaintiffs who are current homeowners in the vicinity of the Site and the contaminant plumes have and will continue to sustain property damages including, but not limited to the difference between the current value of their property and such value if the harm had not been done and the cost of repair or restoration.

26. Each of the Plaintiffs brings suit against each of the Defendants for each cause of action listed herein and seeks general damages directly and foreseeably resulting from Defendants'

6

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 10 of 73 PageID #: 39

actions, as well as nominal, consequential damages, and punitive damages, as allowed by law and in an amount to be proved at trial.

27. The amounts of damages sought herein exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### *Facts and Claims Relating to Individual Plaintiffs*

28. Plaintiff, **Maria R. Ackerson,** currently resides at 8 Bacon Lane, Babylon, NY 11702.

29. From 1964 to 1991, this Plaintiff resided at 1090 Stewart Avenue, Bethpage, NY. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

30. Maria R. Ackerson regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

31. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

32. In 2017, this Plaintiff was diagnosed with **lung cancer.**

33. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

34. Plaintiff, **Rita Aquina,** currently resides at 65 Daniel Road N., North Massapequa, NY 11758. She owns this property located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

35. From 1966 to 1974, this Plaintiff resided at 14 Gail Drive, North Massapequa, NY 11758, which is also located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

7

Case 1:19-cv-00942  Document 1-2  Filed 02/15/19  Page 11 of 73 PageID #: 40

36. Rita Aquina regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the properties, the Park, and the surrounding neighborhood.

37. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

38. In or about February, 2018 this Plaintiff was diagnosed with **breast cancer**.

39. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

40. Plaintiff, **Andrew Barten**, currently resides at 56 Stratford Road, Plainview, NY 11803.

41. From 1992 to 1999, this Plaintiff resided at 86 South Millpage Dr., Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

42. Andrew Barten regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

43. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

8

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 12 of 73 PageID #: 41

44. In or about December 2016, this Plaintiff was diagnosed with **bladder cancer** and has developed **gastroparesis** as a result of his treatment. This Plaintiff also suffers from **multiple myeloma**.

45. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has suffered and continues to suffer severe physical injury, pain, and suffering.

46. Plaintiff, **Edward Boyce**, currently resides at 168 Carrie Drive, Clayton, North Carolina 27527.

47. From 1963 to 2000, this Plaintiff resided at 36 Sherman Avenue, Bethpage, NY 11714 with his family. Plaintiff's family members owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

48. Edward Boyce regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

49. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

50. In or about June 2018, this Plaintiff was diagnosed with **soft tissue sarcoma.**

51. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

52. Plaintiff, **Jude Brewer, individually and on behalf of the Estate of Marianne Brewer**, currently resides at 46 Gingham Lane, Bethpage, NY 11756.

53. Jude and Marianne Brewer owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

9

54.     Jude Brewer, individually and on behalf of the Estate of Marianne Brewer, has and continues to sustain property damages caused by contamination at the above property.

55.     Marianne Brewer resided at 46 Gingham Lane from 1991 to 2018.

56.     Marianne Brewer regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

57.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated the Brewers' home and the surrounding area, Marianne Brewer developed significant debilitating personal injuries.

58.     In or about September 2016, Marianne Brewer was diagnosed with colon cancer.  She passed away in or about October 2017.

59.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, Marianne Brewer suffered severe physical injury, pain, and suffering.

60.     Jude Brewer, on behalf of the Estate of Marianne Brewer, brings this claim for wrongful death caused by the Defendants.

61.     In addition, Jude Brewer, individually, has sustained a loss of companionship, services and support as a result of Defendants' actions which resulted in the death of his wife, Marianne Brewer.

62.     Plaintiff, **Iris Cales**, currently resides at 44 Charles Street, Hicksville, NY 11801.

63.     From 2002 to 2010, this Plaintiff resided at 4142 Hicksville Rd., Bethpage, NY and from 2010 to the present Plaintiff has resided at 44 Charles Street, Hicksville, NY 11801. Both of the above properties are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

10

64.  Iris Cales regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the above properties, the Park, and the surrounding neighborhood.

65.  As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

66.  In or about July 2017, this Plaintiff was diagnosed with **breast cancer**.

67.  As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

68.  Plaintiff, **Theresa Caputo**, currently resides at 180 N. Herman Avenue, Bethpage, NY 11714.  Plaintiff has been renting at this address since 2015.  The property is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

69.  Theresa Caputo regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

70.  As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

71.  In or about January 2016, this Plaintiff was diagnosed with **colon cancer**.

72.  As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has suffered and continues to suffer severe physical injury, pain, and suffering.

11

73. Plaintiff, **John Carr**, currently resides at 79 Stonecutter Road, Levittown, NY 11756. This Plaintiff has lived at this address since 1983. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

74. John Carr regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

75. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

76. In or about August 2018, this Plaintiff was diagnosed with **thyroid cancer**.

77. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

78. Plaintiff, **Armand L. Cipullo, individually and on behalf of the Estate of Angela Cipullo,** currently resides 72 West Millpage Drive, Bethpage, NY 11714. Plaintiff has resided at this address since 1973.

79. Armand L. Cipullo owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

81. Armand L. Cipullo has and continues to sustain property damages caused by contamination at the above property.

82. Angela Cipullo resided at 72 West Millpage Drive, Bethpage, NY 11714 from 1973 to 2017. Angela Cipullo regularly spent time in the yard and ingested, inhaled and had direct dermal

12

contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

83. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated the Cipullos' home and the surrounding area, Angela Cipullo developed significant debilitating personal injuries.

84. In or about April 2017, Angela Cipullo was diagnosed with **lung cancer**. She passed away in 2017.

85. As a result of Defendants' reckless, negligent, and grossly negligent conduct, Angela Cipullo suffered severe physical injury, pain, and suffering.

86. Armand L. Cipullo, on behalf of the Estate of Angela Cipullo, brings this claim for wrongful death caused by the Defendants.

87. In addition, Armand L. Cipullo, individually, has sustained a loss of companionship, services and support as a result of Defendants' actions which resulted in the death of his wife, Angela Cipullo.

88. Plaintiff, **Patricia D'Accolti**, currently resides at 1603 Anita Lane, Seaford, NY 11783. She owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

89. From 1975 to 1991, this Plaintiff resided at 249 North Second Street, Bethpage, NY, which is also located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

90. Patricia D'Accolti regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the properties, the Park, and the surrounding neighborhood.

13

91. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

92. In or about May 2018, this Plaintiff was diagnosed with **liver cancer, lung cancer and lymphoma.**

93. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

94. Plaintiff, **Matthew Ferber**, currently resides at 62 Vista Lane, Levittown, NY 11756. This Plaintiff has resided at this property from 1959 to 1986 and from 2009 to the present. This property is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

95. Matthew Ferber regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

96. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

97. In January of 2019, this Plaintiff was diagnosed with **brain cancer.**

98. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

99. Plaintiff, **Renee Gannon**, currently resides at 2 Lincoln Drive, Kings Park, NY 11754.

14

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 18 of 73 PageID #: 47

100.    From 1965 to 1990, this Plaintiff resided at 15 St. Johns Ave, Hicksville. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

101.    Renee Gannon regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

102.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

103.    In or about May 2017, this Plaintiff was diagnosed with **melanoma**.

104.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

105.    Plaintiff, **William Gladitsch,** currently resides at 3664 Collector Lane, Bethpage, NY 11714. This Plaintiff has lived at this address since 1983. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

106.    William Gladitsch regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

107.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

15

Case 1:19-cv-00942   Document 1-2   Filed 02/15/19   Page 19 of 73 PageID #: 38

108.    In 2016, this Plaintiff was diagnosed with **bladder cancer,** and, in 2017, this Plaintiff was diagnosed with **prostate cancer**.

109.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

110.    Plaintiff, **Sara Grandison, individually and on behalf of the Estate of Geralyn Grandison,** currently resides at 3718 Martha Blvd., Bethpage, NY 11714. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

111.    Sara Grandison has and continues to sustain property damages caused by contamination at the above property.

112.    Geralyn Grandison lived at the above property from 1964 to 2017. Geralyn Grandison regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

113.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, Geralyn Grandison developed significant debilitating personal injuries.

114.    In or about October 2016, Geralyn Grandison was diagnosed with **throat and tongue cancer**. She passed away on January 31, 2017.

115.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, Geralyn Grandison has suffered severe physical injury, pain, and suffering.

116.    Sara Grandison, on behalf of the Estate of Geralyn Grandison, brings this claim for wrongful death caused by the Defendants.

16

117.    Plaintiff, **Robert Haley**, currently resides at 142 6th Street, Hicksville, NY.

118.    From 1954 to 1960, this Plaintiff resided at 71 Red Maple Drive N., Wantagh, NY, and from 1960 to 1978, Plaintiff resided at 3752 Regent Lane, Wantagh, NY. Both of these properties are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

119.    Robert Haley regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

120.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

121.    In or about 2016, this Plaintiff was diagnosed with **lymphoma**.

122.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has a nd continues to suffer severe physical injury, pain, and suffering.

123.    Plaintiff, **Lauri Henriques**, currently resides at 24 Seabrook Lane, Stony Brook, NY 11790.

124.    From 1960 to 1982, this Plaintiff resided at 22 Lexington Avenue, Bethpage, NY 11803. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

125.    Lauri Henriques regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

126.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated

17

Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

127.    In or about April 2016, this Plaintiff was diagnosed with **breast cancer and mesothelioma**.

128.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

129.    Plaintiff, **Diane Hirsch**, currently resides at 1603 Abaco Drive, Coconut Creek, Florida 33066.

130.    From 1979 to 2004, this Plaintiff resided at 98 Windhorst Ave., Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

131.    Diane Hirsch regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

132.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

133.    In or about November 2018, this Plaintiff was diagnosed with **ovarian cancer and bladder cancer**.

134.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

18

135.    Plaintiff, **Edyta Klimkiewicz**, currently resides at 85 Martin Road North, Bethpage, NY 11714. This Plaintiff has lived at this address since 1999. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

136.    Edyta Klimkiewicz regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

137.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

138.    In or about January 2018, this Plaintiff was diagnosed with **ovarian cancer**.

139.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

140.    Plaintiff, **Regina Kreuz**, currently resides at 16 Bruce Lane, Farmingdale, NY 11735. This Plaintiff has lived at this address since 2000. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

141.    Regina Kreuz regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

142.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

19

143.    In or about September 2017, this Plaintiff was diagnosed with **multiple myeloma**.

144.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

145.    Plaintiff, **William Lavin**, currently resides at 3 Wilson Lane, Bethpage, NY 11714. This Plaintiff has lived at this address since 2007.

146.    Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

147.    William Lavin regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

148.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

149.    In or about June 2018, this Plaintiff was diagnosed with **tachycardia**. He also suffers from **autoimmune disorders**.

150.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

151.    Plaintiff, **Candace Lu**, currently resides at 174 Snedecor Avenue, West Islip, NY 11795.

20

152.    From 1983 to 2006, this Plaintiff resided at 2 Sherman Place, Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

153.    Candace Lu regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

154.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

155.    In or about August 2018, this Plaintiff was diagnosed with **breast cancer**.

156.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

157.    Plaintiff, **Scott Lutzer** currently resides at 1496 Hampton Road, Allentown, PA, 18104.

158.    From 1955 to 1967, this Plaintiff resided at 6 Deb Street, Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

159.    Scott Lutzer regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

160.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated

21

INDEX NO. 600558/2019
RECEIVED NYSCEF: 01/11/2019
Case 1:19-cv-00942  Document 1-2  Filed 02/15/19  Page 25 of 73 PageID #: 54

Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

161.    In or about October 2018, this Plaintiff was diagnosed with **bladder cancer.**

162.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

163.    Plaintiff, **Marie Martello,** currently resides at 369 Glenview Dr., Chatham VA, 24531.

164.    From 1975 to 1988, this Plaintiff resided at 29 Stuben Avenue, Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

165.    Marie Martello regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

166.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

167.    In or about September 2016, this Plaintiff was diagnosed with **breast cancer.**

168.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

169.    Plaintiff, **Kathleen McCarthy**, currently resides at 348 N. Virginia Avenue, North Massapequa, NY 11758. This Plaintiff has lived at this address since 2013. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

22

170.     Kathleen McCarthy regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

171.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

172.     In or about July 2016, this Plaintiff was diagnosed with **breast cancer**.

173.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

174.     Plaintiff, **Mary McDonald**, currently resides at 41 Roosevelt Drive, Bethpage, NY 11714. This Plaintiff has lived at this address since 1980. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

175.     Mary McDonald regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

176.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

177.     In or about June 2016, this Plaintiff was diagnosed with **kidney disease**.

23

178.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

179.     Plaintiff, **Jessica McNally**, currently resides at 31 Acme Avenue, Bethpage, NY 11714. This Plaintiff has lived at this address since 1991. This property is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

180.     Jessica McNally regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

181.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

182.     In or about May 2016, this Plaintiff was diagnosed with **endometrial cancer**.

183.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues suffer severe physical injury, pain, and suffering.

184.     Plaintiff, **Sarah Motto**, currently resides at 61 Parkview Circle, Bethpage, NY 11714. This Plaintiff has lived at this address since 1991. The above property is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

185.     Sarah Motto regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

186.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated

24

Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

187.     In or about March 2017, this Plaintiff was diagnosed with **ulcerative colitis**.

188.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

189.     Plaintiff, **Antonia Novak, individually and on behalf of the Estate of Frank Novak**, currently resides at 35 Sunny Lane, Bethpage NY 11714.   She owns this property, which are both located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

190.     From 1970 to 2016, Antonia and Frank Novak resided at 41 Linden Avenue, Bethpage, NY 11714, which is also located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

191.     Antonia Novak, individually and on behalf of the Estate of Frank Novak, has and continues to sustain property damages caused by contamination at the above property.

192.      Frank Novak regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

193.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, Frank Novak developed significant debilitating personal injuries.

194.     In or about January 2017, Frank Novak was diagnosed with **leukemia** and passed away in April 2017.

195.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Frank Novak sustained severe physical injury, pain, and suffering.

25

196.    Antonia Novak, on behalf of the Estate of Frank Novak, brings this claim for wrongful death caused by the Defendants.

197.    In addition, Antonia Novak, individually, has sustained a loss of companionship, services and support as a result of Defendants' actions which resulted in the death of her husband, Frank Novak.

198.    Plaintiff, **Michael O'Shea**, currently resides at 15 Bradford Lane, Bethpage, NY. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

199.    From 1976 to 1978 this Plaintiff resided at 17 Cambridge Ave., Bethpage, NY and from 1978 to 1994 Plaintiff resided at 28 Linden Avenue, Bethpage, NY. Plaintiff resided at 51 Coronet Cresent, Bethpage, NY from 1994 to 1995 and at 194 Hicksville Road, Bethpage, NY from 1995 to 2000. Plaintiff has resided at 15 Bradford Lane, Bethpage, NY from 2013 to the present. All of these properties are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

200.    Michael O'Shea regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

201.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

202.    In or about September 2018, this Plaintiff was diagnosed with **discoid lupus**.

203.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

26

204.     Plaintiff, **Clara Palumbo**, currently resides at 6 Bishoff Avenue, Bethpage, NY 11714. This Plaintiff has lived at this address since 1985. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

205.     Clara Palumbo regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

206.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

207.     In or about October 2017, this Plaintiff was diagnosed with **breast cancer**.

208.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

209.     Plaintiff, **Roxane Pandya**, currently resides at 11 Woodcrest Rd, Hicksville, NY 11801. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

210.     Roxane Pandya regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

211.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

27

212.    In or about June 2017, this Plaintiff was diagnosed with **ovarian cancer**.

213.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

214.    Plaintiff, **Maria Panno,** currently resides at 120 Railroad Avenue, Bethpage, NY 11714. Plaintiff owns/rents the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

215.    Maria Panno regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

216.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

217.    In 2017, this Plaintiff was diagnosed with **breast cancer**.

218.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damage and severe physical injury, pain, and suffering.

219.    Plaintiff, **Joseph Reid,** currently resides at 4 Boone Street, Bethpage, NY 11714. This Plaintiff has lived at this address since 1983.

220.    Joseph Reid has previously lived at 48 Curtis Place, Bethpage, NY 11714 from 1954 to 1977 with his family. Plaintiff and/or Plaintiff's family members owned/rented the above properties, which are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

28

221.     Joseph Reid regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

222.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

223.     In or about April 2016, this Plaintiff was diagnosed with **colon cancer**.

224.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

225.     Plaintiff, **Brian Reid**, currently resides at 73 Annandale Rd, Holbrook, NY 11741.

226.     Plaintiff resided at 4 Boone Street, Bethpage, NY 11741 from 1983 to 2013. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

227.     Brian Reid regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

228.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

229.     In or about August 2016, this Plaintiff was diagnosed with **colon cancer**.

230.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has suffered and continues to suffer severe physical injury, pain, and suffering.

29

231.    Plaintiff, **Damon Rivera**, currently resides at 31 Moore Drive, Bethpage, NY 11714. This Plaintiff has lived at this address since 2014. The above property is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

232.    Damon Rivera regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

233.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

234.    In or about June 2017, this Plaintiff was diagnosed with **Hodgkin's lymphoma**.

235.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

236.    Plaintiff, **Josephine Ryan**, currently resides at 96 Apollo Circle, Bethpage, NY 11714. This Plaintiff has lived at this address since 2000. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

237.    Josephine Ryan regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

238.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

239.    In or about January 2018, this Plaintiff was diagnosed with **kidney cancer**.

30

240.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

241.    Plaintiff, **Bonnie Scence**, currently resides at 51 Parker Ave., Levittown, NY 11756. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

242.    Bonnie Scence regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

243.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

244.    In or about December 2016, this Plaintiff was diagnosed with **lung cancer**.

245.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

246.    Plaintiff, **Lisa Sciarratta**, currently resides at 3578 Courtney Lane, Bethpage, NY 11714. This Plaintiff has lived at this address since 2009.

247.    Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

248.    Lisa Sciarratta regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

31

249. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

250. In or about May 2018, this Plaintiff was diagnosed with **thyroid cancer**.

251. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

252. Plaintiff, **Dana Seaman**, currently resides at 125 S. Racetrack Road, Henderson, NV 89015.

253. From 1972 to 1999, this Plaintiff resided at 3794 Dianne Street, Bethpage, NY 11714 with his family. Plaintiff and/or Plaintiff's family members owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

254. Dana Seaman regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

255. As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

256. In or about January 2016, this Plaintiff was diagnosed with **breast cancer**.

257. As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

32

258.     Plaintiff, **Nicholas Sergio**, currently resides at 151 Harrison Avenue, Bethpage, NY 11714. Plaintiff has lived at this address since 2011. From 1995 to 2011, this Plaintiff resided at 8 North Sheridan Ave., Bethpage NY 11714. Both of the above properties are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

259.     Nicholas Sergio regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

260.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

261.     In or about May 2017, this Plaintiff was diagnosed with **prostate cancer**.

262.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

263.     Plaintiff, **John Sharrocks**, currently resides at 139 Maple Avenue, Bethpage, NY 11714. This Plaintiff has lived at this address since 1974. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

264.     John Sharrocks regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

265.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

33

266.     In 2018, this Plaintiff was diagnosed with **arterial fibrillation.**

267.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

268.     Plaintiff, **Angelo V. Sottile**, currently resides at 12 Dorothy Street, Bethpage, NY 11714. This Plaintiff has lived at this address since 1962. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

269.     Angelo V. Sottile regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

270.     As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

271.     In or about March 2018, this Plaintiff was diagnosed with **tachycardia**.

272.     As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

273.     Plaintiff, **Ariana Tantillo**, currently resides at 4 Inwood Place, Melville, NY 11747.

274.     From 1989 to 1997, this Plaintiff resided at 70 South 1st Street, Bethpage, NY 11714. Plaintiff owned/rented the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

34

275.    Ariana Tantillo regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

276.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

277.    In or about March 2017, this Plaintiff was diagnosed with **breast cancer and ulcerative colitis**.

278.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

279.    Plaintiff, **Anthony Tommasulo**, currently resides at 134 Wantagh Avenue, Levittown, NY 11756. This Plaintiff has lived at this address since 1971. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

280.    Anthony Tommasulo regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

281.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

282.    In or about April 2018, this Plaintiff was diagnosed with **lung cancer, respiratory system disorder, and acute kidney failure**.

35

283.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

284.    Plaintiff, **Mildred Tommasulo**, currently resides at 134 Wantagh Avenue, Levittown, NY 11756. This Plaintiff has lived at this address since 1971. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

285.    Mildred Tommasulo regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

286.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

287.    In or about July 2016, this Plaintiff was diagnosed with **lung cancer**.

288.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

289.    Plaintiff, **Frank Turrisi**, currently resides at 9 Verly Court, Bethpage, NY 11714. This Plaintiff has lived at this address since 1973. This Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

290.    Frank Turrisi regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the above properties, the Park, and the surrounding neighborhood.

36

291.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

292.    In or about December 2015, this Plaintiff was diagnosed with **bile duct cancer**.

293.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

294.    Plaintiff, **Frank Verdone**, currently resides at 30 Scherer Street, Bethpage, NY 11714. This Plaintiff has lived at this address since 1993. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

295.    Frank Verdone regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

296.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

297.    In or about July 2017, this Plaintiff was diagnosed with **prostate cancer**.

298.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

299.    Plaintiff, **Thomas Villani**, currently resides at 210 N. 6th Street, Bethpage, NY 11714. This Plaintiff has lived at this address since 2006. Plaintiff also resided at 206 N 6th Street

37

from 1998 to 2006. Both of the above properties are located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

300.	Thomas Villani regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

301.	As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

302.	In or about April 2016, this Plaintiff was diagnosed with **leukemia**.

303.	As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to suffer severe physical injury, pain, and suffering.

304.	Plaintiff, **Neil Wegman**, currently resides at 29 Clark Street, Plainview, NY, 11714. This Plaintiff has lived at this address since 1991. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

305.	Neil Wegman regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the property, the Park, and the surrounding neighborhood.

306.	As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

307.	In or about September 2017, this Plaintiff was diagnosed with **prostate cancer**.

38

Case 1:19-cv-00942  Document 1-2  Filed 02/15/19  Page 42 of 73 PageID #: 71

308.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

309.    Plaintiff, **Nicholas Yaniro**, currently resides at 2 Thomas Avenue, Bethpage, NY 11714. Plaintiff owns the above property, which is located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

310.    From 1965 to 1970 and from 1998 to the present, this Plaintiff has resided at 2 Thomas Avenue, Bethpage, NY 11714. From 1976 to 1998 Plaintiff resided at 258 N 3rd Street, Bethpage, NY 11714, which is also located in the vicinity of the Site and/or the OU-2/OU-3 contaminant plumes.

311.    Nicholas Yaniro regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials, as well as the water and the outdoor and indoor air at the properties, the Park, and the surrounding neighborhood.

312.    As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances at the Site, which contaminated Plaintiff's home and the surrounding area, this Plaintiff has developed significant debilitating personal injuries.

313.    In 2016, this Plaintiff was diagnosed with **thyroid problems**.

314.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, this Plaintiff has and continues to sustain property damages and severe physical injury, pain, and suffering.

39

## PARTIES: DEFENDANTS

315. Upon information and belief, Defendant, Northrop Grumman Corporation ("NGC" "Grumman" or "Defendant"), is a corporation organized under the laws of the state of Delaware, with its principal place of business at 2980 Fairview Park Drive in Falls Church, Virginia.

316. Upon information and belief, Northrop Corporation, the predecessor to Northrop Grumman Corporation, acquired Grumman Corporation, whose primary place of business was in Bethpage, New York, and it was incorporated under the laws of the State of New York.

317. Defendant, Northrop Grumman Systems Corporation ("NGSC" or "Defendant"), is a subsidiary of NGC, and is organized under the laws of the State of Delaware with its headquarters in Falls Church, Virginia. Upon information and belief, NGSC is the successor in interest to the Grumman subsidiary, Grumman Aerospace Corporation, which was headquartered in Bethpage, New York and incorporated under the laws of the State of New York.

318. NGC and/or NGSC or their predecessors owned and/or operated the Site at the time of the disposal and/or release of the hazardous and toxic contaminants at the Site.

319. When reference is made in this Verified Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

320. The term "Defendant" or "Defendants" refers to both Defendants named herein jointly and severally, including their predecessors.

321. Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings

40

Case 1:19-cv-00942   Document 1-2   Filed 02/15/19   Page 44 of 73 PageID #: 73

referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

### *The Contaminants*

322.    Trichloroethylene ("TCE") is a colorless, volatile, man-made liquid chemical that is used by industry as, among other things, a solvent to remove grease from metal parts. TCE can be released into the air, water, and soil at locations where it is produced, stored, used, or discharged. The United States Environmental Protection Agency ("EPA") and the International Agency for Research on Cancer ("IARC") classify TCE as a human carcinogen.

323.    As used herein, TCE shall include all of its trade names, including but not limited to Acetylene, Anameth, Benzinol, Pholex and any of its degradation breakdown products.

324.    TCE can enter groundwater systems through improper disposal or leaks into the ground. TCE is highly mobile once it enters the soil and will result in substantial percolation into groundwater aquifers. TCE can remain in groundwater for long periods of time, since it cannot readily evaporate from groundwater.

325.    TCE can enter the human body from the air, water, or soil.

326.    TCE is extremely toxic to humans, even at low concentrations. Acute exposure to TCE has been shown to affect the central nervous system, liver, and kidneys in humans. Chronic exposure to TCE may cause liver and kidney damage, impaired immune system function, and impaired fetal development in pregnant women. TCE is toxic by inhalation, by prolonged or repeated contact with the skin or mucous membrane, or when taken by mouth.

41

327.    Polychlorinated Biphenyls ("PCBs") are odorless volatile synthetic organic chemicals, which are either oily liquids or solids. PCBs enter the environment as mixtures containing a variety of individual chlorinated biphenyl components as well as impurities.

328.    A manufacturing ban for PCBs took effect in 1979 in the United States because there was evidence that PCBs build up in the environment and may cause harmful effects.

329.    Once released into the environment, PCBs do not readily break down and therefore remain for long periods of time cycling between air, water, and soil. PCBs can be carried long distances and have been found in snow and sea water in areas far away from where they were released into the environment.

330.    PCBs have been demonstrated to cause cancer, as well as a variety of other adverse health effects on the immune system, reproductive system, nervous system, and endocrine system. The IARC classifies PCB as a human carcinogen.

331.    2-Butanone (Methyl ethyl ketone) is a colorless and volatile liquid used as a solvent and an additive for making other chemicals.    It is widely used in paints, glues, and other finishes because it rapidly evaporates and will dissolve many substances.

332.    2- Butanone will not stick to soil, and if it is spilled onto soil, it will travel through the soil into underground water sources. Some of the 2-butanone found in soil or water will also evaporate to the air.

333.    Exposure to 2-butanone in humans can cause irritation to the eyes, nose, and throat. Chronic inhalation studies in animals have reported slight neurological, liver, kidney, and respiratory effects. Developmental effects, including decreased fetal weight and fetal malformations, have been reported in mice and rats exposed to this chemical via inhalation and ingestion.

42

334.    Perchloroethylene ("PERC") is a manufactured chemical that is widely used for degreasing metal parts and in manufacturing other chemicals.

335.    As used herein, PERC shall include its other names - tetrachloroethylene, tetrachloroethene, and PCE - and any of its breakdown products.

336.    In humans, PERC is known to adversely affect the central nervous system, the liver, kidneys, blood, immune system, and the reproductive system.

337.    Epidemiological studies link PERC exposure in the workplace with several types of cancer, specifically bladder cancer, non-Hodgkin's lymphoma, and multiple myeloma.

338.    The EPA has determined that PERC is likely to be carcinogenic to humans by all routes of exposure.

339.    As used herein, 1,1,1-Trichloroethane (TCA) shall include all of its trade names, including but not limited to methyl chloroform, methyl trichloromethane, trichloromethyl methane, and trichloromethane.

340.    1,1,1-Trichloroethane was often used as a solvent to dissolve other substances, such as glues and paints, and to remove oil or grease from manufactured parts. Since 2002, its use has been restricted.

341.    Until the 1990s, 1,1,1 – Trichloroethane formulations usually included 1,4-Dioxane, an emerging contaminant and probable human carcinogen, which was used as a stabilizer/metal inhibitor.

342.    1,1,1-Trichloroethane in groundwater can evaporate and pass through soil as a gas and, finally, be released to the air.

343.    Effects reported in humans due to acute (short-term) inhalation exposure to 1,1,1-trichloroethane include hypotension, mild hepatic effects, and central nervous system (CNS) depression. Cardiac arrhythmia and respiratory arrest may result from the depression of the CNS.

43

Symptoms of acute inhalation exposure include dizziness, nausea, vomiting, diarrhea, loss of consciousness, and decreased blood pressure in humans. After chronic (long-term) inhalation exposure to methyl chloroform, some liver damage was observed in mice and ventricular arrhythmias in humans.

344.    As used herein, 2-Hexanone shall include all of its trade names, including but not limited to methyl butyl ketone and MBK.

345.    2-Hexanone is a clear colorless liquid that, when in liquid form, evaporates into the air as a vapor.

346.    2-Hexanone was formerly used in paint and paint thinner and in various chemical substances. However, since it was found to have harmful health effects, it is no longer made in the United States and its uses have been restricted.

347.    Humans can take in 2-Hexanone when breathing its vapors, eating food or drinking water that contains it, or coming into contact with it through the skin.

348.    The most important health concern for humans from exposure to 2-hexanone is its harmful effects on the nervous system. These effects were seen in workers who were exposed to 2-hexanone for almost a year. The major effects were weakness, numbness, and tingling in the skin of the hands and feet. Similar effects were seen in animals that ate or breathed high levels of 2-hexanone; these effects included weakness, clumsiness, and paralysis. The neurotoxic potency of 2-hexanone is increased when combined with 2-butanone (see above).

349.    As used herein, carbon tetrachloride shall include all of its trade names, including but not limited to carbon chloride, methane tetrachloride, perchloromethane, tetrachloroethane, or benziform.

350.    Carbon tetrachloride is a manufactured chemical that does not occur naturally. Carbon tetrachloride was used as a cleaning fluid and degreasing agent, in fire extinguishers, and in

44

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 48 of 73 PageID #: 77

spot removers. Because of its harmful effects, these uses are now banned and it is only used in some industrial applications.

351.    Carbon tetrachloride can be trapped in groundwater for long periods of time, and will eventually evaporate into the air. Carbon tetrachloride does not generally stick to soil particles.

352.    Carbon tetrachloride is known to adversely affect the cardiovascular, hepatic, and nervous systems in humans.  After exposure to high levels of carbon tetrachloride, the nervous system, including the brain, is affected. Such exposure can be fatal.

353.    Chromium is used mainly in metal alloys as chrome plating.  It can be polished to a mirror-like finish, and provides a durable, highly rust resistant coating.  A common form of chromium used by industry in dyes, paints, primers and other surface coatings is hexavalent chromium (chromium VI).

354.    Hexavalent chromium enters the environment through industrial applications such as electro painting and chemical manufacturing. Groundwater contamination may occur due to improper disposal of industrial manufacturing equipment.

355.    Humans can be exposed to hexavalent chromium through contaminated soil, water and air.

356.    Hexavalent chromium is a known human carcinogen.  Inhalation of hexavalent chromium compounds is associated with a higher risk of lung, nasal and sinus cancer.

357.    Other health impacts of exposure to hexavalent chromium include damage to the skin, liver, kidneys, cardiovascular, reproductive, and gastrointestinal systems.

358.    Radium is a radioactive metal that has many isotopes, including the hazardous radioactive isotopes radium 226 and radium-228 (collectively "radium").

359.    The EPA and the DEC have established a maximum contaminant level for radium-226 and radium-228 (combined) in drinking water of 5.0 picocuries per liter (pCi/L).

45

INDEX NO. 600558/2019
RECEIVED NYSCEF: 01/11/2019

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 49 of 73 PageID #: 78

360. Radium is a hazardous substance and a known human carcinogen.

361. Exposure to radium can result in an increased incidence of bone cancer, liver cancer, breast cancer, lymphoma, and hematopoietic diseases such as leukemia and aplastic anemia.

362. Radium-226 decays to a radioactive gas, radon-222 ("radon").

363. Radon is a known human carcinogen and is a leading cause of lung cancer in the United States.

364. Radon can be dissolved in groundwater and travel through the soil. It can enter the air inside a home through cracks in the foundation and through aeration of water during its use in washing machines, showers, and cooking.

365. 1,4-Dioxane is a synthetic industrial chemical that is completely miscible in water that has been used in many products, including paint strippers, dyes, greases, varnishes and waxes. 1,4-Dioxane is also found as an impurity in antifreeze and aircraft deicing fluids.

366. 1,4-Dioxane is used as a stabilizer for chlorinated solvents such as TCA and for other industrial and laboratory uses.

367. 1,4-Dioxane is classified by the EPA as likely to be carcinogenic to humans by all routes of exposure. Short-term exposure may cause eye, nose and throat irritation and long-term exposure may cause kidney and liver damage.

368. 1,4-Dioxane is short-lived in the atmosphere, but may leach readily from soil to groundwater, migrates rapidly in groundwater, and is relatively resistant to biodegradation in the subsurface.

369. On information and belief, many additional toxic chemicals were used and discharged into the environment by the Defendants during their operations. The above list is by no means closed and is only meant to highlight some the Contaminants found at and emanating from the Site.

46

370.     Upon information and belief, the Contaminants and their derivatives, in amounts and concentrations above New York State and federal residential and industrial safety levels were and continue to be discharged from the Site and from the resulting contaminant plumes and have and continue to cause harm to the Plaintiffs.

371.     The presence of certain radioactive and emerging Contaminants became publicly known only recently, as the capability and/or requirements for testing have changed and as specific locations were sampled.

### *Defendants' Ownership and Use of the Site*

372.     Defendants and/or their predecessors owned and/or operated the Site for several decades.  On information and belief, Grumman's operations at the Bethpage Facility began in 1937 and its use of the NWIRP site began in 1942.  Manufacturing operations at the Site continued until 1996.

373.     The uses at the Site included the manufacture and testing of naval aircraft, naval amphibious craft, and satellites for the National Aeronautics and Space Administration.

374.     Throughout its operations at the Site, Grumman used, stored and disposed of various hazardous wastes and solvents from industrial processes directly into the environment. These wastes included VOCs and the other Contaminants.

375.     Grumman knew that the Site is located in close proximity to residential areas.  It knew or should have known that the Contaminants it discharged would migrate into the surrounding environment, contaminating the air, soil and groundwater in the neighborhood of the Site.

376.     Upon information and belief, Grumman had several plants on the Site, where it used TCE as part of the degreasing operations.

377.     Upon information and belief, starting in or about 1970, Grumman used a 4,000-gallon aboveground tank at Plant #2 to store TCE. At some point, Grumman discovered that the

47

tank was leaking and had it replaced. It is unknown how long TCE had been leaking into the ground before the leak was discovered, but Grumman was aware of an unexplained "loss" of TCE for an estimated two or three years prior to discovery of the leak.

378.    Upon information and belief, after an uncontrolled quantity of TCE was discharged into the soil, Grumman finally replaced Plant #2's leaking tank and discovered that the bottom of the tank was already rotten.

379.    Spray wands containing TCE were used to degrease large parts, such as wings of planes. TCE was also used to clean the paint guns used in painting airplanes.

380.    On information and belief, the wastewater generated from the above operations, would be pumped to a tank truck and taken to Grumman's on-site waste treatment plant at Plant #2, known as the Industrial Wastewater Treatment Facility.

381.    The wastewater treated at the Plant #2 Industrial Wastewater Treatment Facility also came from metal finishing operations conducted at both Plant #2 and Plant #3 at the NWIRP.

382.    As described below, the above wastewater, containing many toxic chemicals, was dumped in sludge drying beds in another area of the property, which later became the Bethpage Community Park.

383.    Improper disposal of Contaminants in this area became a major source of groundwater contamination at and emanating from the Site.

384.    Grumman dug "recharge basins" directly into the ground throughout the Bethpage Facility, which it used, at least in part, to dispose of wastewater. Upon information and belief, there were at least a dozen recharge basins across the Bethpage Facility at various points in its operational history.

48

385.    These structures were designed to allow the wastewater to infiltrate back into the ground and return to the groundwater supply relied upon by Plaintiffs. This wastewater contaminated the groundwater at the Site and migrated downgradient, causing the ongoing contaminant plume(s) and soil and vapor contamination in the area.

386.    When the discharge basins became clogged and water could no longer percolate into the ground, Grumman would operate bulldozers to scrape the basins. The contaminated and noxious scrapings obtained from these discharge basins were then used to fill in other low-lying areas on the premises of the Bethpage Facility. Upon information and belief, these areas were unlined and also became source areas of contamination.

387.    Grumman also had a practice of spraying waste oil on dirt roads at the Site in order to control dust. Later, petroleum-related substances were found among the Contaminants at and emanating from the Site.

388.    The former NWIRP includes approximately 105 acres of the Site and a separate 4.5 acre parcel to the north of that parcel. The NWIRP was purchased by the United States Navy in 1947 and leased to Grumman for research, testing, design, engineering and manufacturing purposes. Grumman operated this portion of the Site from 1942 until it closed in 1998. In 2002, the Navy transferred the 4.5 acre parcel to Nassau County. In 2008, the Navy transferred 96 acres of the 105-acre main parcel to Nassau County and is leasing the remaining 9 acres to Nassau County.

389.    Starting from the early 1950s, Grumman accumulated and stored drums containing liquid waste materials from operations at Plant 3 and potentially other sources at the former NWIRP in a portion of the Site known as the Drum Marshaling Area. Approximately 200 to 300 drums were stored at any one time.

49

390.    The waste drums reportedly contained chlorinated and non-chlorinated solvents, liquid cadmium, cyanide and chromium wastes. During the early 1990's, transformers containing PCBs and autoclaves were also stored at the Drum Marshaling Area.

391.    Until 1982, the drum storage area did not have a cover or spill containment.

392.    Subsequent testing determined that the Drum Marshaling Area was a source of groundwater contamination at and emanating from the Site.

393.    Dry wells located in the vicinity of Plant 3, which were part of the stormwater management system at the Site, were found to contain PCBs.   PCB-containing fluids are suspected to have entered the system through floor drains in Plant 3 and impacted the underlying soil by passing through permeable well bottoms.   Upon information and belief, these discharges were yet another source of contamination at and emanating from the Site.

### *Bethpage Community Park and Former Grumman Settling Ponds*

394.    The land that comprises the current Bethpage Community Park was originally primarily farmland and was purchased by Grumman in 1941.

395.    From approximately 1943 through 1962, Grumman utilized a portion of this area, known as the Former Grumman Settling Ponds, for disposal of wastewater and other wastes from its industrial operations the Site.   Among the various wastes were chromium, PCBs and VOCs used for cleaning or degreasing machinery or fabricated parts.

396.    The toxic sludge generated at the Industrial Wastewater Treatment Facility was transported to the Former Grumman Settling Ponds and placed in one of two sludge drying beds.

397.    Spent rags generated during the wipe-down process of a paint booth water curtain located at Plant #2 were also transported to a nearby area, where they were emptied into a pit ("rag pit"). Used oil may have also been discarded in the rag pit.

50

398.    This area was also utilized as a wastewater discharge recharge area and fire training facility where waste oil and jet fuel were ignited and extinguished.

399.    Defendants' operations in this area resulted in the release of Contaminants into the surrounding soil and groundwater, creating a deep, toxic plume.

400.    In October 1962, Grumman donated this land, comprising approximately 18 acres near the intersection of Stewart Avenue and Cherry Avenue in Bethpage, to the Town of Oyster Bay, for use as parkland. Shortly thereafter, Bethpage Community Park, as it appears today, was constructed on the property, and is accessible to community residents year round.

401.    The Park contains a ball field area, an active storm water recharge basin, a parking area, the Town Ice Skating Rink, and the Town Pool.

402.    Within the Park, the ball field area was built over the location of the Former Grumman Settling Ponds.

403.    NGSC remains the current owner of the Grumman Access Road, a closed private road in the vicinity of the Park associated with the former Plant.

404.    Bethpage High School is located directly to the east of the Park, across Stewart Avenue, and residential properties are located south of the Park across from the Access Road.

405.    In March of 2002, Grumman conducted soil sampling in the Park. The analytical results indicated levels of PCBs and metals exceeding the DEC's Soil Cleanup Objectives. The Park was temporarily closed, but was reopened later that year.

406.    In July of 2005, Northrop Grumman Systems signed a Remedial Investigation and Feasibility Study Order on Consent for the contaminated area encompassing the Former Grumman Settling Ponds, Adjacent Areas of the Bethpage Community Park, and the Grumman Access Road, collectively known as OU-3.

51

407.    Between 2006 and 2007, the Town of Oyster Bay excavated and disposed of approximately 175,000 cubic yards of contaminated soil from a 7 acre area of the Park as part of the construction of a new ice rink.

408.    Subsequently, in 2008 a Remedial Investigation Report for OU-3 identified 16 contaminants of concern, including the Contaminants. The Report concluded that the southwest portion of the Park is a continuing source of groundwater contamination.

### *OU-1, OU-2, and OU-3*

409.    In 1983, the Grumman and NWIRP sites, excluding the Park, were listed in the Registry of Inactive Hazardous Waste Disposal Sites in New York State.

410.    In December 1987, the Bethpage Facility was reclassified as a "Class 2 Site," or a site posing a "[s]ignificant threat to the public health or environment" and requiring remedial action.

411.    In March 1993, the Grumman site and the NWIRP site were separated and listed as independent class 2 Superfund sites, designated as Site 130003-A and Site 130003-B, respectively.

412.    In order to address the on-site and off-site contamination, the DEC divided it into three Operable Units ("OU").

413.    OU-1 encompasses the former manufacturing plant areas on site.

414.    In 1995, the DEC issued Records of Decision ("ROD") for the Northrop Grumman and NWIRP Sites concerning on-site soil contamination in OU-1.

415.    OU-2 consists of an extremely large groundwater contamination plume that is continuously moving south-southeast. The source area of the OU-2 plume originates from both the NWIRP and Northrop Grumman properties, with VOCs present at different concentrations and different depths. OU-2 includes a network of wells which are used to monitor this plume.

416.    In March of 2001, the NYSDEC issued a ROD for OU-2. This ROD provided for wellhead treatment at impacted public water supply wells, boundary monitoring of the plume, and

52

Case 1:19-cv-00942   Document 1-2   Filed 02/15/19   Page 56 of 73 PageID #: 85

the contingency for additional wellhead treatment should other wells be affected. The ROD also included on-site extraction wells and treatment systems, which are currently in operation.

417.    Among other things, the 1995 and 2001 RODs found that groundwater plumes in and around the Site contained TCE and other chlorinated VOCs.

418.    OU-3 encompasses the source area of the Former Grumman Settling ponds, adjacent areas of the Park, and the Grumman Access Road. It has also been used to refer to the off-site plume of contaminants flowing from these areas.

419.    The groundwater flow direction is primarily horizontal with a downward component to the south-southeast.    OU-3 leaves the Site as a distinct plume, but then becomes comingled with the larger OU-2 plume.

420.    Generally, the OU-3 plume is deeper and more concentrated than the larger OU-2 plume. It has impacted both the Upper Glacial and Magothy aquifers.

### *Remediation Efforts From 2013 to the Present*

421.    In March 2013, the DEC issued a ROD for the remediation of OU-3. With respect to the off-site groundwater plume, the ROD required the immediate treatment of the area of elevated concentrations, or "hotspot" area of the plume that had been identified approaching Bethpage Water District Plant 4. The ROD also called for additional monitoring wells to allow for the delineation of the leading edge of the OU-3 plume.

422.    In May 2015, the NYSDEC entered into a Consent Order with Northrop Grumman to remediate "hot spots" identified in the larger OU-2 groundwater plume.

423.    The above efforts were limited to discrete source areas and were not intended to or sufficient to remediate the full extent of the contaminant plumes.

424.    In 2016, the Town of Hempstead Water District and the Bethpage Water District sued the Defendants and others over contamination of their public water supply wells.

53

425.     Realizing the continuing and expanding threats to groundwater resources and local residents, in February 2017, Governor Cuomo directed the DEC to undertake an immediate engineering investigation to expedite containment of the plume.

426.     At that time, the DEC estimated that the toxic contaminant plume from the Site (OU-2 and OU-3) was approximately 3.7-miles long, 1.8 miles wide and up to 800 feet deep, containing 24 contaminants.

427.     In December 2017, New York State announced a $150 million plan to contain the plume. The plan includes installing 14 remediation wells around the perimeter of the plume, from the Hicksville area down to the Southern State Parkway.

428.     On information and belief, even if and when constructed, the above containment system may prevent the plume from travelling further downgradient, but will not effect a complete "cleanup" in the areas already impacted.

429.     In May 2018, the Bethpage Water District announced that it will be shutting down five of its public water supply wells due to the contamination caused by Defendants.

430.     To date, despite decades of investigation and over thirty years since remediation was required, the full vertical and horizontal extent of the contaminant plumes and the exact amounts of Contaminants in the impacted areas are unknown.   The only certainty is that the plumes continue to expand.

431.     According to the DEC Site Record, "[T]he site presents a significant threat due to the ongoing releases of contaminants from source areas into groundwater and the continued migration of contaminated groundwater."

432.     Plaintiffs have and/or continue to reside within the areas of OU2 and/or OU3 and/or in nearby areas that are impacted by the above plumes.

54

Case 1:19-cv-00942   Document 1-2   Filed 02/15/19   Page 58 of 73 PageID #: 87

433.     Plaintiffs have been and/or continue to be exposed to the Contaminants at the Park, in the affected neighborhoods and in their homes.

### *Radium, Radon and 1,4-Dioxane Detections*

434.     On information and belief, in January 2013, the Bethpage Water District detected radium at 5.87 pCi/L in its drinking water Well 4-1, which is located southeast of the Site.

435.     On information and belief, as a result of this exceedance of State and federal standards, this well was taken out of service.

436.     Subsequently, testing of monitoring wells at the Bethpage High School and the Central Boulevard Elementary School conducted in 2017 revealed elevated levels of radium. On information and belief, radium was found at two to five times the maximum contaminant levels.

437.     Both schools are located within the area of the contaminant plumes emanating from the Site, with the high school being across the street from the Park and the elementary school about a mile to the south of it.

438.     Additional groundwater sampling conducted at the Site by the US Navy in April and May 2018 found radium levels above federal and state standards in three of the wells.

439.     In 2017, the Bethpage School District conducted testing for radon gas. Although the results from the elementary school were not released, on information and belief, levels of radon found at the high school and middle school were at close to 4.0 pCi/L, a ceiling above which corrective action is recommended by the Environmental Protection Agency.

440.     On information and belief, the School District installed a soil vapor barrier at the elementary school to minimize radon exposure.

441.     On information and belief, Grumman's operations at the Site included quality control and research projects including radionuclides and the use of radium based paint on luminous dials on aircraft instruments and spacecraft components.

55

442.    On information and belief, the levels of radium and radon at and near the Site are above the naturally occurring levels of these substances on Long Island and are likely a result of Grumman's operations.

443.    Upon information and belief, Plaintiffs who were or are customers of the Bethpage Water District have been exposed to elevated levels of radium in their drinking water, at least before the decommissioning of Well 4-1 in 2013.

444.    Upon information and belief, Plaintiffs have been exposed to elevated or higher than normal levels of radon through soil vapor intrusion and aeration into the buildings and homes located at or near the Site and plumes.

445.    Upon information and belief, 1,4-Dioxane was used by Grumman in its industrial operations at the Site and has been detected in the contaminant plumes.

446.    Although the EPA has not established a maximum contaminant level in drinking water for this emerging contaminant, New York State, in December 2018, recommended adopting a standard of 1.0 ug/L (parts per billion).

447.    According to available data from the Bethpage Water District, 1,4-Dioxane is present at levels many times this standard in the public water supply wells used by the Plaintiffs.

448.    Upon information and belief, Plaintiffs who were or are customers of the Bethpage Water District have been exposed to harmful levels of 1,4-Dioxane in their drinking water as a result of Defendants' actions.

### *The Defendants Have Not Remediated the Contamination*

449.    The remediation plans, if any, set forth by Defendants were and still remain inadequate and insufficient given the breadth of the contamination, as well as the present and historical migration of the harmful contaminants. Defendants have repeatedly failed to exercise

56

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 60 of 73 PageID #: 89

the reasonable care necessary to eliminate, correct, and/or remedy the dangerous condition created by them and/or located upon their land.

450.     Further, Defendants have intentionally delayed and repeatedly chosen meaningless courses of action, patently inadequate and unreasonable given the likely injuries to Plaintiffs.   During the entire period of their operations at the Site and in the three and a half decades since the designation of the Site as a hazardous waste site, Defendants have been unable to remediate or stop the plume presently injuring Plaintiffs. The actions chosen and taken by Defendants were with knowledge that such delay and minimal action would cause the toxic contaminants to disperse and migrate from the Site and onto Plaintiffs' land and property. These actions have been undertaken with actual malice and in wanton and willful and/or reckless disregard for Plaintiffs' health and property.

451.     As a result of Defendants' negligent, willful, and/or wanton storage, disposal, and release of the Contaminants into the soil and/or groundwater, and/or the subsequent and continuing failure to remediate or take reasonable action to mitigate the release and migration of said substances, the plumes of contaminants, at concentration levels in excess of federal and/or state regulatory limits,  have and continue migrate throughout the areas downgradient of the Site and onto the properties of Plaintiffs. These toxic chemicals have entered the water, soil, indoor and outdoor air, causing Plaintiffs' injuries.

452.     The presence of the Contaminants on and off Site in Plaintiffs' neighborhood and on and under their places of residence has resulted in permanent and continuing harm to Plaintiffs' persons.  Plaintiffs have been and continue to be exposed to the Contaminants by ingestion, inhalation, and dermal exposure.

453.     The damage to Plaintiffs includes potentially injurious and unhealthy vapors escaping from the soil in and under their homes and adjacent private property.

57

454.    The numerous egregious actions and incidents occurring at and near the Site by Defendants constitute an intentional and/or negligent breach of their duty of reasonable care and violations of New York State law.

455.    Defendants, through their negligent and/or reckless acts, have repeatedly and unreasonably invaded each and every Plaintiff's right to possession and undisturbed occupancy of their residences and have repeatedly trespassed thereon by causing migration of toxic contaminants onto Plaintiffs' real properties and harm to their persons.

456.    In order to compensate Plaintiffs for damages suffered due to Defendants' acts, each Plaintiff requires, among other things, that Defendants, and each of them, pay the past and future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination emanated from the plume, with Plaintiffs retaining freedom of choice relative to choosing their experts. Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

### AS AND FOR A FIRST CAUSE OF ACTION:
### NEGLIGENCE

457.    Plaintiffs re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

458.    Negligence may exist both as an omission as well as an affirmative act. A cause of action sounding in negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.

459.    Here, the Defendants, as owners and operators of business(es) at the Site that managed, stored, used and disposed of toxic contaminants and solvents, owed Plaintiffs a cognizable duty to exercise reasonable care in the storage, transportation, and disposal of toxic

58

chemicals, including but not limited to the Contaminants, and in the maintenance of their tools and equipment used for such acts.

460.　　Defendants breached their duty of reasonable care, which a reasonably prudent person should use under the circumstances, by causing and/or allowing and/or failing to prevent the release of the Contaminants into the soil and groundwater in and around the Site and the migration of the Contaminants towards and onto residential property, including property occupied by Plaintiffs.

461.　　The release of the Contaminants into the soil and groundwater is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties.

462.　　Upon learning of the release of the Contaminants, Defendants owed Plaintiffs a duty to timely notify Plaintiffs that these had occurred in the vicinity of Defendants' operations at the Site.

463.　　Defendants breached that duty by failing to timely notify the Plaintiffs of the releases of the Contaminants at the Site, and, consequently, in the vicinity of Plaintiffs' homes.

464.　　As a result of Defendants' breaches of their duty to timely notify the Plaintiffs, the Plaintiffs were forestalled from undertaking effective and immediate remedial measures and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

465.　　Upon learning of the release of the Contaminants, Defendants owed Plaintiffs a duty to warn the Plaintiffs of the release of the Contaminants and the dangers to the Plaintiffs and their properties that resulted therefrom.

466.　　Defendants breached this duty by failing to adequately warn the Plaintiffs of the release of the Contaminants and the potential dangers and harms that could result.

59

467.     The Defendants' failure to warn is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties.

468.     Defendants further had a duty to the Plaintiffs, upon learning of the release of the Contaminants, to act reasonably to remediate, contain, and eliminate the discharges before the Contaminants injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs.

469.     Defendants breached that duty by failing to act reasonably to remediate, contain, and eliminate the discharges in a timely and effective manner before the Contaminants injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs.

470.     As a result of Defendants' breaches of their duty to Plaintiffs by failing to act reasonably to remediate, contain, and eliminate the discharges, the Defendants' actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties.

471.     Defendants had a duty to the Plaintiffs to ensure that all of their facilities were safe and sufficiently secure as to prevent the release of the Contaminants into the environment surrounding their facilities and into the Plaintiffs' homes.

472.     Defendants negligently breached their duties to the Plaintiffs to ensure that all their facilities were safe and sufficiently secure as to prevent the release of the Contaminants into the environment.  As a result of this breach, Contaminants entered into the indoor and outdoor areas used by the Plaintiffs and into Plaintiffs' homes and injured Plaintiffs.

473.     Defendants had a legal duty to promptly and properly investigate and remediate the contamination from their activities at the Site and had full knowledge of the threat it poses to human health and safety.

60

474.    Defendants willfully and wantonly breached their legal duty to promptly and properly investigate and remediate the contamination, despite full knowledge of the threat it poses to human health and safety. This failure is the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties.

475.    At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle Plaintiffs to be protected against such actions or inactions.

476.    Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, in a sufficient amount to compensate them for the injuries and losses sustained, including but not limited physical pain and suffering, physical disabilities, mental anguish, loss of the enjoyment of life's pleasures, inability to participate in Plaintiffs' usual employment and activities, lost income and lost earning opportunities, medical expenses (past and future), economic loss, loss of companionship, services and support and other damages which are the natural and proximate result of Defendants' conduct.

### AS AND FOR A SECOND CAUSE OF ACTION:
### ABNORMALLY DANGEROUS ACTIVITY

477.    Plaintiffs re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

478.    Activities such as the disposal of hazardous chemical wastes constitute an abnormally dangerous activity for which strict liability will apply.

479.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise handling toxic substances, including the Contaminants, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

61

Case 1:19-cv-00942   Document 1-2   Filed 02/15/19   Page 65 of 73 PageID #: 94

480.     Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leak into the surrounding land and groundwater, and in doing so, failed to warn Plaintiffs of the dangerous condition that was caused thereby.

481.     The risks posed by such activities outweigh any value associated with the same. As a result of said ultra-hazardous and abnormally dangerous activities, Plaintiffs have suffered damages and imminent, substantial and impending harm to their health, families, and home values. Plaintiffs have expended or will be forced to expend significant resources to address their injuries caused by the contamination indefinitely for years and decades into the future.

482.     By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiffs.

483.     Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, in a sufficient amount to compensate them for the injuries and losses sustained, including but not limited physical pain and suffering, physical disabilities, mental anguish, loss of the enjoyment of life's pleasures, inability to participate in Plaintiffs' usual employment and activities, lost income and lost earning opportunities, medical expenses (past and future), economic loss, loss of companionship, services and support and other damages which are the natural and proximate result of Defendants' conduct.

## AS AND FOR A THIRD CAUSE OF ACTION:
## PRIVATE NUISANCE

484.     Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

485.     Under a cause of action for private nuisance, Parties may be subject to liability for environmental contamination if their conduct invades another's private use and enjoyment of land

and if such invasion is: 1) intentional and unreasonable; 2) negligent or reckless; or 3) actionable under the rules governing liability for abnormally dangerous conditions or activities.

486.    Defendants owned, occupied, controlled and/or still own, occupy and control the real property at the Site.

487.    Defendants owned, occupied, controlled and/or still own, occupy and control their real property in such a way as to create and/or maintain and continue a dangerous and/or hazardous condition.

488.    At all times mentioned herein, Defendants had knowledge and/or notice of the dangerous condition that the Contaminants and the toxic groundwater plumes presented and failed to take reasonable steps to clean up, correct, or remediate that condition.

489.    Additionally, Defendants owed a duty to Plaintiffs to take reasonable action to eliminate, correct, or remedy any dangerous condition existing on Defendants' property that was reasonably foreseeable to injure Plaintiffs and/or Plaintiffs' real property, and of which they had knowledge and/or notice.

490.    Further, Defendants owed a duty to Plaintiffs to exercise reasonable care and skill in the construction, maintenance, use or management of their property to prevent a structure, appurtenance, or condition thereon from endangering the neighboring premises and occupants. Defendants have breached these duties, and each of them, by negligently, willfully, and/or wantonly creating a dangerous condition on their property by allowing massive quantities toxic contaminants to be spilled, disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer on their property. This dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and their property due to the size and nature of the releases of the Contaminants and the proximity of Plaintiffs and their properties.

63

491.    Defendants owed a duty to Plaintiffs to exercise reasonable care to keep the dangerous contaminants and their byproducts from being discharged or allowed to escape, enter surrounding properties, and cause injury and damage.

492.    Defendants breached their duty to Plaintiffs by failing to exercise reasonable care and skill in the construction, maintenance, use or management of their property to prevent a structure, appurtenance, or condition thereon from endangering the neighboring premises and occupants. Specifically, Defendants negligently, willfully, and/or wantonly allowed massive quantities of Contaminants to be disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer at the Site.

493.    Defendants further breached their duty to Plaintiffs by failing to exercise reasonable care and by maintaining their property in such a condition as to allow large and unknown quantities of the Contaminants to degrade, mix with other chemicals, and escape from their property and enter onto and under adjacent areas, including Plaintiffs' properties. The above-described breaches endangered, injured, and damaged the Plaintiffs. Such a dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and their properties.

494.    Defendants also breached their duty by continuing and maintaining this dangerous condition at the Site that was reasonably foreseeable to injure Plaintiffs and their real property.

495.    Plaintiffs have suffered foreseeable injury and damages proximately caused by the negligent creation and/or maintenance of the dangerous condition by Defendants.

496.    Defendants owed a duty to Plaintiffs to refrain from creating and/or maintaining a dangerous condition on Defendants' properties that was reasonably foreseeable to injure Plaintiffs and their real property.

64

497.    Defendants breached that duty by causing dangerous Contaminants to be released onto Plaintiffs' land and caused noxious gases, fumes and odors to emanate from the soil and into the homes.

498.    Accordingly, this breach has caused Plaintiffs injury to their persons and property that is certain, substantial, and this resulting condition interferes with Plaintiffs' physical comfort.

499.    Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, in a sufficient amount to compensate them for the injuries and losses sustained, including but not limited physical pain and suffering, physical disabilities, mental anguish, loss of the enjoyment of life's pleasures, inability to participate in Plaintiffs' usual employment and activities, lost income and lost earning opportunities, medical expenses (past and future), economic loss, loss of companionship, services and support, and other damages which are the natural and proximate result of Defendants' conduct.

500.    In addition, those Plaintiffs who are current property owners in the area of the contaminant plumes seek general damages directly flowing from the nuisance, including, but not limited to the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, and consequential damages flowing from the nuisance.

### AS AND FOR A FOURTH CAUSE OF ACTION:
### TRESPASS

501.    Plaintiffs re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

502.    Environmental contamination of a property constitutes a trespass as it interferes with the conditions of the property. This act of trespass is, in and of itself, objectionable.

65

Case 1:19-cv-00942 Document 1-2 Filed 02/15/19 Page 69 of 73 PageID #: 98

503.     Upon information and belief, Defendants had exclusive control over the Site at all relevant times.

504.     Upon information and belief Defendants' negligent, willful, and/or wanton actions and/or intentional failures to act caused an uncontrolled quantity of Contaminants to be spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site.

505.     Upon information and belief, the Contaminants spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site entered and trespassed upon the land and realty of the Plaintiffs, thus interfering with the condition of Plaintiffs' properties, causing an injury to their possession and/or right of possession.

506.     Upon information and belief, Defendants took affirmative, voluntary, and intentional actions to store, use, and transport in an unsafe manner and/or intentionally to dispose of the Contaminants into the ground.

507.     Upon information and belief, at the time that the above described affirmative, voluntary, and intentional acts were performed, Defendants had good reason to know or expect that the large quantities of Contaminants would pass through the soil, groundwater, and aquifer from Defendants' land to the land of Plaintiffs and the neighboring properties.

508.     Upon information and belief, the above-described affirmative, voluntary, and intentional acts were performed with the willful intent and or reckless indifference to the fact that the Contaminants would necessarily be dispersed through the soil, groundwater, and aquifer and migrate onto the property of Plaintiffs, causing personal injury and property damage to Plaintiffs.

509.     Defendants' actions in disposing of uncontrolled amounts of the Contaminants into the ground were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiffs' rights, health and property.

66

510.     These voluntary actions resulted in the immediate and continued trespass of the Contaminants on the Plaintiffs' properties, thus interfering with the condition of Plaintiffs' property, causing personal injury and damage to Plaintiffs' health and damage to their property.

511.     Additionally, and/or alternatively, Defendants' decision to delay and the resulting delay in taking effective affirmative action to eliminate, correct, and/or remedy the contamination of the soil, groundwater, and aquifer on their properties after having knowledge and notice of said contamination were done with actual malice or recklessly, and in wanton and willful and/or reckless disregard for Plaintiffs' rights, health and property.

512.     Further, Defendants' actions were patently insufficient to eliminate, correct, and/or remedy the contamination after having knowledge and notice of said contamination.

513.     These actions and omissions resulted in the trespass of the Contaminants on the Plaintiffs' properties, thus interfering with the condition of Plaintiffs' property, causing injury and damage to Plaintiffs, their property and their right of possession of their property.

514.     Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, in a sufficient amount to compensate them for the injuries and losses sustained, including but not limited physical pain and suffering, physical disabilities, mental anguish, loss of the enjoyment of life's pleasures, inability to participate in Plaintiffs' usual employment and activities, lost income and lost earning opportunities, medical expenses (past and future), economic loss, loss of companionship, services and support, and other damages which are the natural and proximate result of Defendants' conduct.

515.     In addition, those Plaintiffs who are current property owners in the area of the contaminant plumes seek nominal and general damages directly flowing from the trespass, including, but not limited to the difference between the current value of their property and such value if the harm had not been done and the cost of repair or restoration.

67

## PUNITIVE DAMAGES

516.    Plaintiffs re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

517.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing personal injuries, property damage, nuisances, and trespasses, disregarding the health and property rights of Plaintiffs.

518.    Defendants' tortious conduct includes but is not limited to:

a. Knowingly and recklessly discharging Contaminants at the Site, knowing that they would enter the groundwater and other media and contaminate neighboring properties;

b. Issuing no warning to Plaintiffs concerning the release of Contaminants from the Site, in the vicinity of Plaintiffs' real property;

c. Knowing but failing to disclose to Plaintiffs the certainty of long-lasting soil, air, and water contamination at the Site, the Park and areas downgradient thereof, including Plaintiffs' residences; and

d. Failing to appropriately remediate the contamination after the Contaminants were detected, causing the contamination to persist and spread for decades.

519.    Defendants have caused great harm to Plaintiffs' person, property, water supplies, indoor and outdoor air, and demonstrated an outrageous conscious disregard for Plaintiffs' safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN SYSTEMS CORPORATION for each and every cause of action alleged herein, granting Plaintiffs compensatory and punitive

68

Case 1:19-cv-00942  Document 1-2  Filed 02/15/19  Page 72 of 73 PageID #: 101

damages, together with the costs and disbursements of this action, and state that the amounts sought herein exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims asserted in this Verified Complaint.

Dated: Melville, New York
January 11, 2019

NAPOLI SHKOLNIK PLLC
*Attorneys for Plaintiffs*

Lilia Factor, Esq.
Paul Napoli, Esq.
Tate Kunkle, Esq.
400 Broadhollow Rd., Suite 305
Melville, New York 11747
(212) 397-1000

69

## VERIFICATION

I, LILIA FACTOR, am an attorney duly admitted to practice law in the Courts of this State, and I affirm the following under penalties of perjury:

I am the attorney for the Plaintiffs in the above entitled action. I have read the foregoing **SUMMONS & VERIFIED COMPLAINT** and know the contents thereof, and upon information and belief, affirmant believes after an inquiry reasonable under the circumstances, the matters alleged herein to be true, and that the contentions herein are not frivolous, as that term is defined in 22 NYCRR § 130-1.1(c).

The reason this verification is made by affirmant and not by Plaintiffs is that the Plaintiffs herein reside in a County other than the County in which I maintain my offices.

The source of affirmant's information and the grounds of his/her belief are communications, papers, reports and investigations contained in the file maintained by this office.

Dated: Melville, New York
       January 11, 2019

LILIA FACTOR

70